This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Heath Mohrman, appeals from the judgment of the Lorain County Court of Common Pleas. For the reasons that follow, we reverse and remand.
 I. {¶ 2} Appellant was employed as a farm coordinator at the Grafton Prison Farm in Lorain County. His duties included organizing and supervising the prison inmates as they worked on the prison farm. Appellant began working at the prison farm in May of 1998. James Diaz ("Diaz"), who had worked at the prison farm since 1995, was also a farm coordinator.
 {¶ 3} In two separate cases that were joined prior to trial, Appellant and Diaz were each charged with two counts of complicity to escape, in violation of R.C. 2923.03(A) and 2921.34(A), and one count of bribery, in violation of R.C. 2921.02(B). These charges related to the co-defendants' alleged behavior occurring from June 2, 1998 to August 3, 1998 regarding inmates at the prison farm. The co-defendants waived their right to a jury trial and, on September 6, 2001, the matter proceeded to a bench trial.
 {¶ 4} At trial, there were several witnesses. Former inmates Eugene Goad ("Goad") and Michael Richmond ("Richmond") made several allegations. Both testified that, with the assistance of Appellant and Diaz, they left the prison farm on June 2, 1998 and went to the home of Richmond's wife. Goad also testified that, with the assistance of Appellant, he left the prison farm on August 3, 1998 to visit with his fiancée at a nearby hotel. Diaz and Appellant both denied all of the charges.
 {¶ 5} At the close of the State's case, the trial court granted Diaz' Crim.R. 29 motion for acquittal with regard to one count of complicity to escape and the bribery charge. Thereafter, the co-defendants were found guilty of the remaining charges. They were sentenced accordingly. This appeal followed.
 II. {¶ 6} Appellant raises three assignments of error. We will consider the second and third assignments of error together to facilitate review.
 A. First Assignment of Error {¶ 7} "APPELLANT MOHRMAN'S SIXTH AMENDMENT RIGHT TO COUNSEL WAS VIOLATED BY TRIAL COUNSEL'S JOINT REPRESENTATION OF APPELLANT MOHRMAN AND CO-DEFENDANT DIAZ."
 {¶ 8} In his first assignment of error, Appellant asserts that his Sixth Amendment right to counsel was violated due to a conflict of interest that arose when a single attorney jointly represented both him and his co-defendant at trial. We agree.
 {¶ 9} Joint representation is suspect because a possible conflict of interest is inherent in it. State v. Dillon (1995), 74 Ohio St.3d 166,168. The Supreme Court of Ohio has held:
 {¶ 10} "A trial court is not constitutionally mandated to inquire of criminal co-defendants whether they wish to be jointly represented by the same counsel. However, the better practice is to make a prompt inquiry and advise each defendant of his or her right to effective assistance of counsel[.] * * * Even though the court is not required to make this inquiry, its judgment will be reversed if an appealing defendant shows that an actual conflict adversely affected counsel's representation of said defendant." State v. Manross (1988), 40 Ohio St.3d 180, syllabus.
 {¶ 11} Absent special circumstances, it is reasonable for a trial court to assume that multiple representation entails no conflict or that the lawyer and his or her clients knowingly accepted the risk of conflict that may be inherent in such representation. Id. at 182, citing Cuylerv. Sullivan (1980), 446 U.S. 335, 346-47, 64 L.Ed.2d 333. Consequently, a trial court is not obligated in every case involving multiple representation to conduct an inquiry into the possibility that a conflict of interest exists. Manross, 40 Ohio St.3d at 181.
 {¶ 12} In the present case, because Appellant made no objection to joint representation at the trial court level, he must now demonstrate that an actual conflict of interest adversely affected his counsel's performance. "In order to establish a violation of his Sixth Amendment right to effective assistance of counsel, a defendant who raised no objection to joint representation at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Id. at 182. An actual conflict of interest exists if "`during the course of the representation, the defendants' interests do diverge with respect to a material factual or legal issue.'" Dillon, 74 Ohio St.3d at 169, quoting Cuyler, 446 U.S. at 356, fn. 3 (Marshall, J., concurring in part and dissenting in part). In other words, an attorney represents conflicting interests "when, on behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose."Manross, 40 Ohio St.3d at 182.
 {¶ 13} In order to demonstrate an actual conflict of interest based upon an attorney's inaction, appellant must be able to establish two elements. State v. Gillard (1997), 78 Ohio St.3d 548, 553. First, he must demonstrate that an alternative strategy or tactic reasonably could have been presented. Id., quoting United States v. Fahey (C.A.1, 1985),769 F.2d 829, 836. It is not necessary for appellant to prove that the defense theory would have been successful, but the alternative theory must be a viable alternative. Gilliard, 78 Ohio St.3d at 553. Second, appellant must prove that the alternative defense strategy was "`inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" Id., quoting Fahey, 769 F.2d at 836.
 {¶ 14} On appeal, Appellant asserts several reasons that an actual conflict of interest existed. Specifically, among other reasons, Appellant argues that trial counsel could not vigorously cross-examine Diaz on his statement that Appellant had asked him at some point in time close to the June escape to transport only Goad and Richmond to the east pasture. This statement was denied by Appellant and, Appellant argues, was inconsistent with the testimony of the former inmates. Appellant also argues that his trial counsel could not fully address the fact that there was an issue with regard to Diaz' involvement in the construction of an unauthorized private room that the inmates built in one of the farm structures, that Diaz admitted that he never kept visual logs of the inmates in spite of the prison farm policy that inmates must be visually seen at least once every thirty minutes, and that, once Goad was put in isolation following the August escape incident, Goad sent Diaz a letter from which it could be inferred that the two men had a personal connection. Appellant asserts that trial counsel could not fully make Appellant's arguments with regard to the Crim.R. 29 motion because to do so would have emphasized Diaz' guilt. Additionally, Appellant asserts that trial counsel could not fully address inconsistencies that arose in witnesses' statements, citing, for example, to the fact that Richmond originally implicated only Diaz with regard to being dropped off and picked up outside the property on June 2.
 {¶ 15} As an alternative strategy, Appellant avers that his trial counsel should have emphasized Diaz' guilt with regard to the June escape. Particularly, he states that his attorney could have pointed out that Appellant had only begun to work at the prison farm in May of 1998 while Diaz had worked at the prison farm for several years, appeared to have the opportunity for communication with the inmates, and may have had past involvement with the inmates, such as when the private room was built on the prison property. Further, with regard to the August escape, Appellant asserts that counsel should have pointed out that, while Diaz was off duty that day, the citizen who reported that Goad escaped stated that he had seen Goad run unaided from behind a hog lot to his fiancée's car. This, Appellant asserts, is factually different than Goad's statement that he was in a vehicle driven by Appellant.
 {¶ 16} We find that trial counsel's joint representation created an actual conflict of interest that prejudiced Appellant's defense. The defense in which trial counsel had a conflict might have demonstrated that Appellant was not involved with regard to any or all of the charges. While we offer no opinion with regard to the success of this strategy or tactic, we recognize that, based upon the record before this court, it is a colorable claim. See, generally, State v. Williams (Oct. 16, 1998), 2nd Dist. No. 97-CA-0131. The first assignment of error is sustained. Having sustained the first assignment of error, we will reverse the judgment from which the appeal was taken and remand for a new trial.
 B. Second Assignment of Error {¶ 17} "TRIAL COUNSEL WAS INEFFECTIVE IN WAIVING JURY TRIAL AND JOINING APPELLANT MOHRMAN'S CASE WITH DEFENDANT DIAZ'S CASE FOR TRIAL."
 Third Assignment of Error {¶ 18} "APPELLANT MOHRMAN IS ENTITLED TO A NEW TRIAL BASED UPON PROSECUTORIAL MISCONDUCT."
 {¶ 19} Inasmuch as the error raised in these assignments of error concerns the integrity of Appellant's conviction, they are rendered moot by our decision to sustain his first assignment of error, which will require us to reverse his conviction. Therefore, pursuant to App.R. 12(A)(1)(c), we exercise our discretion to decline to determine the error assigned.
 III. {¶ 20} Appellant's first assignment of error is sustained. As a result, this Court declines to address the second and third assignments of error. See App.R. 12(A)(1)(c). The judgment of the Lorain County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this decision.
CARR, P.J., WHITMORE, J. CONCUR.